Perkins *et al. v.* McConnell *et al.*

No. 16,494.

PERKINS ET AL. *v.* McCONNELL ET AL.

WILL.—*Construction of.*—*Devise.*—*"Heirs."*—*Rule in Shelley's Case.*—
In the first item of a will the testatrix devised an undivided half of
certain lands in fee-simple, to her son; and the second item was of
the following tenor: "I give and devise to my daughter, Barbara
Will, now Burkhart, the remaining undivided one-half of said farm,
during her natural life, and, after her decease, that said estate is to
go to her lawful heirs."

*Held*, that the devise in the second item is governed by the rule in
Shelley's case, the word "heirs" being a word of limitation and not
of purchase.

*Held*, also, that before the court can conclude that the testatrix em-
ployed the word "heirs" in a sense different from that assigned it
by law, it must be clearly shown by the context that the testatrix
employed the word as one of purchase and not of limitation.

From the Hamilton Circuit Court.

*A. F. Shirts, G. Shirts* and *I. A. Kilbourne,* for appel-
lants.

*T. J. Kane* and *T. P. Davis,* for appellees.

HACKNEY, J.—Siebila Will died testate and the owner
in fee-simple of an eighty acre tract of land in Hamilton
county. By the first item of her last will and testament,
she devised to her son an undivided one-half, in fee-
simple, of said land, and the second item reads as fol-
lows: "I give and devise to my daughter, Barbara
Will, now Burkhart, the remaining undivided one-half
of said farm, during her natural life, and, after her de-
cease, that said estate is to go to her lawful heirs."

After the death of the testator, Lewis Will, the son
named in said first item and said Barbara Burkhart
joined in a deed of general warranty to James M. Myers
for said eighty acre tract. By numerous mesne con-
veyances, decrees, judgments and sales, the appellees

claim the ownership of said lands. The appellants, the sons and daughter of said Barbara Burkhart, claim the ownership of the undivided one-half of said lands, under and by virtue of said second item of the will of Siebila Will.

The only question for consideration is as to the application of the rule in Shelley's case to the item of the will above quoted.

There is nothing in the will, beyond the language given, from which we can learn who, or what class of persons, were intended as the "lawful heirs" of said Barbara.

By the fourth item of the will, the testator's direction is that certain household effects "be equally divided between my said two heirs." In this provision, the persons to whom it applies are distinctly designated, and, under the law, they are "heirs" of Siebila Will.

Counsel insist that the adoption of the word "heirs" in this provision gives character to the phrase "lawful heirs" as used in the former provision, and that we must conclude that its employment in describing her son and daughter furnishes her definition of the "lawful heirs" of Barbara, as the children of Barbara. As to Barbara, we can not know that her husband was not a lawful heir, nor can we know that she had children to become her "lawful heirs," nor do we know that she had either husband or child, so far as disclosed by the will.

The rule in Shelley's Case is simply that a devise of a freehold to one, with a limitation, either mediate or immediate, to his heirs, generally vests the whole estate in the ancestor, the particular devisee; the word "heirs" being one of limitation and not of purchase. 1 Coke, 94, 104a; 2 Jarman on Wills, 1177; Beach on Wills, 352; *Conger* v. *Lowe*, 124 Ind. 368; *Millett* v. *Ford*, 109

Ind. 159; *Allen* v. *Craft,* 109 Ind. 476; *Hochstedler* v. *Hochstedler,* 108 Ind. 506; *Shimer* v. *Mann,* 99 Ind. 190; *Gonzales* v. *Barton,* 45 Ind. 295; *Andrews* v. *Spurlin,* 35 Ind. 262; *McCray* v. *Lipp,* 35 Ind. 116; *Siceloff* v. *Redman's Admr.,* 26 Ind. 251.

We cite only a few of the cases supporting the rule as we have stated it, and adopting it as a rule of property in this State. The cases cited refute the contention of the appellant's learned counsel, that the rule does not apply in this State to devises.

Much of the discussion of counsel is devoted to the question whether the rule applies against the intention of the testator.

We may say that this contention is settled by the repeated decisions of this court, and there is no doubt that the intention of the testator, when ascertained, must control. *Conger* v. *Lowe, supra,* and the cases there cited.

It is only when the intention of the testator is ascertained, that the court can judge of the application of the rule, and the rule does not disclose that intention.

Confusion, when it exists, arises in ascertaining from the provisions of the will what the testator's intention was. In the case before us, there is little room for confusion. The testator has employed, in the limitation upon the devise to Barbara, the word "heirs," which, under the authorities cited, is not a word of purchase.

Before we can conclude that he employed it in a sense different from that assigned to it by the law, there must be something in the context manifesting a clear intention to have employed the word as one of purchase, and not of limitation. See the cases above cited, and particularly those of *Conger* v. *Lowe,* and *Shimer* v. *Mann.*

As we have said, the context supplies nothing from

which we can imply that the children of Barbara Burkhart were intended by the word "heirs."

In *Siceloff* v. *Redman, supra; McCray* v. *Lipp, supra,* and *Conger* v. *Lowe, supra,* the language of the wills there under consideration was of the import of that contained in the will before us.

In the case of *McCray* v. *Lipp, supra,* the language was almost identical with that before us. It was a devise to one for life, "and then to fall to his heirs."

The case of *Conger* v. *Lowe, supra,* found that other language of the provision than that claimed to fall within the rule was of sufficient strength to establish the intention of the testator to employ the words "lawful heirs" as designating the children of the ancestor to whom the life estate was devised. The case is well considered, and the principles announced are decisive of the question before us, against the contention of the appellant.

The judgment of the circuit court is affirmed.

Filed Jan. 12, 1894.